The final case for argument is 15-2072, In Re Silver Peak Systems. Let's make sure everybody's ready. Okay, Mr. Donnelly. Good morning, Your Honors. May it please the Court, I'm Darren Donnelly, and my colleague, Iman Sojidi, represents Silver Peak Systems. I'd like to make four points today. First, even if you accept everything about the evidence in the Patent Office's brief as correct, the proposed modification of McCann lacks at least two elements of the amended claims.  Second, even if you accept that the modification of McCann is supported by substantial evidence, the theory on which it was based was first presented in the final written decision. We had no opportunity to address it in another court's decisions in Dell and Belton. It needs to be set aside. Third, the Board's decisions are not supported by substantial evidence. And fourth, the Board committed legal error in not giving us an opportunity to address the Section 101 issue and construing the claims in a way which found them patent eligible. On the first point, even if you accept the Board's modification of McCann, it lacks two elements of the claims. And you can see the claims as we annotated them on page four of our reply brief. The key limitations are so that the claim continues on from three on to four. On page four of our reply brief, we have annotated there some of the limitations. The ones that are important in the first element are to store the encrypted data and transmit the original data. So the claims require certain operations on encrypted data, certain operations on unencrypted or original data. And what this is saying is the source site appliance is going to receive original data that's unencrypted, it's going to encrypt it and store it in its memory, and it's going to transmit the original data to the destination site appliance. The other important feature is in the second big element there, the destination site appliance is going to encrypt the original data received. So it's going to receive original data, it's going to encrypt it. And what the Patent Office modification of McCann is here is to take the encryption encoding that McCann has on its sending side transaction accelerator and then add that same encryption to the destination side transaction accelerator. So what that modification of McCann does is the data comes in, it's encoded as encryption, and then that encrypted data is transmitted to the other transaction accelerator. It's in what McCann calls binding. And then that same encrypted binding is just stored in the other transaction accelerator. So the modification lacks the element of the claim that it's going to transmit original data because it's transmitted encoding data. It's the reason it's encoded, it's encoded for transmission. And then the receiving destination device is not going to encrypt original data because what the McCann modification sends is encrypted data. So the Patent Office is very clear that its modification is to operate in this way. It's on JAA-30. And if you look at the McCann disclosure, which the office cites, it's paragraph 89 of McCann. McCann is explicit that what it is doing in this encoding scenario is instead of sending original data, it's sending encrypted encoded data. And if you look at figure four of McCann, it's clear that this is the way it operates. So this theory is the same theory my opponent presents here today on page 42 of its brief. And the claims just don't, the claims as proposed to be modified by the office just don't meet the elements of the claims and the conclusion of obviousness that it presents support. Turning to my second point, even if the modification is supported by substantial evidence here, what happened is the theory that the petitioner presented, we dealt with. We removed the basis of the prior art that it presented. So the Patent Office, in its final written decision, came up with its own theory, substituted it in in lieu of the petitioner's. And we saw that for the first time in the final written decision. We never had an opportunity to address it. And had we had an opportunity to address it, we would have. And what you can see, if you look at JAA-234 through 236, that is the petitioner's opposition to our motion to amend. And in that, that is the section where it deals with its theory about why the proposed modification would be obvious. It makes two arguments there. The first is one which is based on testimony of our expert, Dr. Kenning. We dealt with that. The board didn't rely on it. It's irrelevant. The second argument is an argument based on... They didn't rely on it. They certainly addressed it. The board? Yes. Yes, the board comments on Dr. Kenning's deposition testimony. The board's dispositive determination, I think you'll find on JAA-29 and 30, where the board addresses the theory of McCann. Dr. Kenning did not present any support for the assertion, so still we do not receive data for, you know, why area network optimization applies to the at-risk flight, et cetera, et cetera. So I think that was JAA-32 we were referring to, is that right? No. 33. 33. Yep, yep, yep. So you're entirely right. So that's a different part than what I was referring to. So that's referring to parts of Dr. Kenning's declaration. I think if you look back onto JAA-32... We didn't consider him at all. Sorry if I was unclear, Your Honor. On JAA-234 through 235, you will see an argument in petitioner's opposition to our motion to compel, where they argued deposition testimony of Dr. Kenning makes particular concessions. And what that deposition testimony was in substance, they're taking his testimony on a general topic and omitting his testimony on a specific topic related to WAN optimization devices. So in our reply, we say, look, if you look at what he actually testified about here, it's the exact opposite. The board did not adopt the argument that petitioner made based on the deposition testimony of Dr. Kenning. Certainly the board in that one sentence that he quoted addresses the declaration testimony of Dr. Kenning. Sorry if that wasn't clear. The point I was trying to make is that in JAA-234, 235, 236, the board was presented two arguments by petitioner, one based on Dr. Kenning's deposition testimony, which it didn't rely on, and then one based on the Riverbed White Paper. So the Riverbed White Paper was a reference that we showed. It was not a prior art printed publication. It showed conception reduction of practice before any date that it was relevant to, and there was no date from petitioner in any event. So the board, in its final written decision, takes what petitioner argued on 235 and 236 and substitutes its own theory based on McCann for the conclusion that the petitioner argued for. And we see that in the first time in its final written decision. I guess I just want to be clear on what you're saying. You started off ten minutes ago. I guess this was point two you raised. Yes. And you said you had no opportunity to respond.  Because obviously the only thing you're responding to is what the petitioner is saying, right? So if the board does anything beyond what the petitioner has said, then that's somehow something that you've been denied your opportunity to respond to. I just want to— Yeah, it's a fair question. What's the boundary of how long a leash can you give the board? And I think this case is indistinguishable from what happened in Dell. So in Dell, the party was presented for the first time at oral argument, a theory that slides in a prior art reference meant this element of claims caddies. And that was the only basis that the board adopted in its final written decision for holding claims invalid. Our situation is actually worse than Dell, because we didn't even see this theory at oral argument. This was a theory that the board came up with after we removed the Riverbed white paper as a possible prior art reference. When you say it's a theory they came up with, it's sort of like applying law to the facts kind of theory? I think it is a theory of how someone skilled in the art would interpret parts of McCann and what conclusions can be drawn from that first determination about how McCann would motivate itself to modify. It's sort of like the nature of the judicial process? It very well may be the nature of the judicial process, but the Administrative Procedure Act requires that we be given notice of the facts and law to which we are going to be called to address. Well, McCann was in play, I take it? McCann was certainly in play. So the question is, are you saying that the board was disabled from having taken its own view of what McCann means? From what the petitioners may have viewed? Well, what I'm saying is there was a theory of invalidity or non-patentability presented by the petitioner. And it's very clear what that theory is. It's on J.A. 235 and 236. They say the Riverwood white paper motivates or explains there's a need for security and it provides a solution in disk encryption. And what the patent office says is, I'm going to step in and say, Riverbed, or excuse me, McCann, it provides a different motivation and then provides a slightly different ultimate modification motivated by McCann itself. The patent office says McCann motivates itself to modify. No. No, no, please, please. It just doesn't make any sense in the situation. What the theory of McCann is by the patent office is that you take data which is encrypted on one side, the sending transaction or the accelerator. And the theory is that that addresses security. And so McCann, the modified theory is you take that encrypted data, you send it over and encrypt it again on the destination side. But unmodified, here's what McCann does. Unmodified, the encrypted data is saved at the sending side. And unmodified, that same data is encrypted on the destination side. So if security is the concern, unmodified out of the box, McCann gives you security on one side, security on the other. And there's no suggestion in the record about why that security is inadequate. And McCann should self-modify itself to add an encryption one other time on the destination side. Did you move for reconsideration? We didn't know. Do you have the ability to move for reconsideration in these circumstances? I think there's probably a legal ability and a practical ability. I think you're aware of the board's practical determinations on motion for reconsideration. They often deny them. They often write something. From your perspective, it may be an exercise in self-justification, but it is responsive, at least on paper, to what... We did not move for reconsideration. Let me ask you this. I don't want to use up all your rebuttal time. I'm here to be helpful. All right. This case is somewhat unusual in that Riverbed's not here. I don't know at what point Riverbed lost interest in this case, but at some point, I would assume that when you canceled the original claims, at least their interest in the case was abated, and they had less interest, judging from the fact that they no longer pursued the matter, in the motion to amend and the amended claims. In this situation, I wonder if your argument about the board's not really being able to act as an initial fact finder on its own is somewhat attenuated, because there may be, and I don't know whether this case really fully fits this pattern, but there may well be instances in which, when initial claims are canceled, the petitioner couldn't care less and disappears, but the board continues on, on the motion to amend, and the board has to make determinations somehow and comes up with its own determinations. What's wrong with that? I mean, I understand your argument that you didn't have an opportunity, but how would the board go about, in the change of roles, how would the board go about addressing the problem that they no longer have a petitioner with respect, making arguments with respect to the motion to amend? I think the guidance we have is from the statute and regulations, right? So it is supposed to evaluate that motion on the preponderance of the evidence. And with you having the burden. With us having the burden. And what is unmistakable here is that the entirety of the evidence tips in only one way. Well, okay. But I actually want you to address, if you would, the more general problem of what is the board to do in a situation where the petitioner bails and the board is essentially on its own with the evidence that it has? It's a fair question. And I think there's two options, right? One, the board can say, I'm going to be an examiner and there's going to be an ongoing dialogue with the movement about whether or not their moving papers sufficiently convince the board of particular issues and maybe it goes back and forth. Well, I think the board can. Well, go ahead. I think there's two ways to end up on this, right? One is that way. And the other is, well, you know, this is an adversarial proceeding. It is structured so that when the same way the other adversarial proceedings which come up before this court, when one party bails, then there's no real controversy and the movement prevails. Right. But the first course seems to be more consistent with what the Supreme Court has recently told us about the board. And it's in a hybrid proceeding which is partly adjudicatory and partly adjudicatory. It's partly adversarial and it's partly examinational. And it would seem to me that the examinational component would come to the fore in a situation such as the one that I presented. I'm not sure how well this case maps on that hypothetical, but I can certainly imagine such a hypothetical coming up. Yeah, I certainly can imagine as well. I think the board needs to choose what role it's going to be. Is it going to be examinational or is it going to be not? And the board has come up before this court and tells parties in front of it time and time again that it is not acting in an examinational manner at the motion to amend stage. But did I hear you say that, therefore, you get it. If the other side is dropped out, you move to amend and you automatically get it because there's no one on the other side, that it's kind of a default? Yeah, that's what I thought. Is that what you said? I think it depends on the nature of the evidence in front of the board. Which the board, on which the board can make findings. It may be adverse to you. You said that the evidence could only be due to one way, but obviously it couldn't be unless you're agreeing with the board. If I was unclear, I meant to say on these particular facts. The facts of this case are we've got a patent over which this patent was previously allowed by the office, broader claims. We have one theory of non-obviousness presented by the petitioner that is relevant here, which is based on a white paper which was disqualified as being a prior printed publication. We have evidence from our expert, which explains why the proposed substantive amended claims are patentable over the original references, which in large measure the board does not really challenge in its written decision. The board exclusively adopts a theory based on petitioner's white paper premise and substitutes in its own rationale for that. So I don't know if the right decision in all instances there would be that you just reverse and send it back, or it is by default in the situation where the non-movement steps out. But I think the better position overall, at least from what the board has told this court and what it has told applicants, is that it doesn't want to be in a situation to be an examiner. And I think given the structure of the process of an IPR with the board constrained by statute for completing these in a particular time period, and at least so far it's not in predilection to take its additional six months, the process is not set up in a way where structuring to tip the side on it being an examinational one in nature is going to give the patent owners any fair opportunity for deprocess. I think the better position there is to go the other way. Thank you, Your Honor. Thank you. Please, the court, I'd like to start right where you ended. You can imagine the situation where somebody drops out of the Interparties Review and you end up with only one side, the patent owner, advocating for amended claims. In that situation, it cannot be the case that the board has to issue those claims. That just can't be right. Well, not only that. I mean, what I didn't ask your opposing counsel is if we agree that the board was right on its analysis of the facts and properly applied the law, we're still being asked necessarily to reverse it. That's correct, Your Honor. And I think this case, my understanding when I read the briefing, is that the arguments they're raising really go more to the substantial evidence supporting the board's decision. But before we get to the substantial evidence, can you tell me, I mean, Judge Bryson suggested that McCann was in play in this case. What are the limits on the board when they've got a motion to amend and once it's in the end, the party's gone? What they can draw from in order to base their decision when they've got no one giving them anything on the petitioner's side? Well, I think there is an issue of due process. There is a due process issue that could come up. I don't think it is implicated in this case at all. But in decisions like EIDL 3, what the general process is is that the board, the patent owner is supposed to come forward with the best evidence and defend against the best evidence that it has in the prior art. So come forward with all the prior art that's known to it, show the prior art that's in play in the examination, in the review, and explain how their claims, their amended claims, their proposed amended claims are patentable over that prior art or are patentable in general. Just to be clear, the board here didn't say that you didn't adequately deal with the prior art of record, so you lose. The board itself looked at the prior art of record. That's exactly right. And not just the prior art of record, but you can see from the record in this case that there were many opportunities that the patent owner availed himself of to submit evidence about that prior art. So expert declarations, making arguments, motions, and so forth. So this doesn't seem like the type of situation where they weren't granted process. And the can was front and center. That is exactly correct, yes. It's the whole way through. And in fact, when the review was, when the petition was first submitted, all the claims were canceled. All the existing claims were canceled. It was not a contingent cancellation, so they're gone. The only thing here is whether the amendment, the motion to amend, will be granted. That's the only issue here. So the can has been in place the entire time. At what point did Riverbed fail? I think it was after the board proceedings, so this is not the horrible case where you might imagine the patent owner, under their theory, the patent owner would get free reign to submit whatever amended claims would be required to be granted. That's not the case here. That gives him a stronger case, right? Because, therefore, he, since the petitioner was still in play through the proceedings, he was focused, as one might suggest one ought to be, on what the petitioner was saying and not necessarily the other prior art that the petitioner didn't raise. Certainly it is not that horrible case. But I do want to make a distinction from the cases, say, Cites the Bell case or other ones in that line, in that those cases didn't, if I remember correctly, did not deal with motions to amend. Those are the primary case. And you can imagine, in the primary case, it's much more of an adjudicatory capacity. The board is being asked to resolve this dispute between the two parties about whether the certain prior art reference based upon the certain theory that they granted the petition on, whether that is correct, which side is correct. Once you get into a motion to amend, the game changes because the board is being asked to issue new claims and they're asked to do it in one shot. And I think in Proxicon, this is kind of the court, kind of observed that this is the case and it's a slightly different situation. So you would endorse the view that the process becomes examinational, if that's a word, at that point? It is certainly more examinational than it is. Your opposing counsel said that the board had previously disclaimed any examinational role. I'm not sure what he's talking about there, but I think that the board, there is a certain obligation. I think this is what the board recognizes in their cases, their I-03 cases in Proxicon, that they have to make sure that those claims, they're issuing valid claims, they have an affirmative obligation. You have two possible realities. One is that you would eliminate the possibility of filing a motion to amend because the other one would be when you file it, you get it. Right. That's right. And just to be clear, as was alluded to, the burden is on the patent owner when filing these motions to amend. And they have to come forward and convince the board that the claim should issue over all the prior art. So it doesn't really make sense to say the board just throws up its hands and say, well, nobody's talking back to us, or if, for example, in this case, Riverbed, had not identified a piece of evidence in that prior art. Here's an example that is more extreme in this case, but I think still falls well within the realm. Prior art discloses two embodiments. One of them clearly reads on the amended claims, but for some reason, the petitioner just doesn't, only discusses the other embodiment, which is pretty good. The board says, look, even if we agree with you on the pretty good one, this other one clearly discloses it. We can't issue these claims because clearly it discloses it. The fact that they didn't raise that theory, that particular theory, on that same piece of prior art, the board is not under an obligation, doesn't have an obligation to issue the claims regardless when it's clearly invalid on their face. You wanted, before we interrupted you, to deal with the substantial evidence question. Well, I'm happy to deal with the substantial evidence, but I do think it's important that I did want to raise it in the context of the fact that it is their burden in this case. With respect to the substantial evidence, I disagree that the board somehow declined to look at the evidence they presented. It certainly looks like, from their opinion, they go through and very carefully look at the expert reports, and they either credit or don't credit. They believe or they don't believe what their expert is saying. But that's not ignoring. That is analyzing what the expert did. In this case, I think it's pretty clear, based upon the generalized testimony from the expert and the particularized disclosure in the patent, that they have encryption at one of their transaction accelerators. This is the prior art patent application. That they do, in fact, use encryption at the transaction accelerator, which the board found was explicitly disclosed for the sending transaction. That's correct. That's the problem. That's right. I believe you made the argument. I'm not sure this argument was squarely made before the board that the prior art did not disclose sending original data. I'm not sure that was squarely made before the board. Of course, since it's their burden, they have to raise the issues that they think are not there. Regardless, the prior art does disclose a permissive. It's permissive whether or not you send your encoded, your encrypted data. Actually, the disclosure is very similar in the prior art to the patent at issue. The patent at issue, what they rely upon for their written description is, it says, quote-unquote, which may be encrypted when this data is being sent. Which may be encrypted. That's A-475, line 7-14. That's citing A-63, column 11, lines 48-51. This is in the McCann prior art reference. It says at A-975, paragraph 89, it says, rather than transmitting and caching verbatim segments, the sending TA can transmit in vertical functions the segments, e.g. encryptions of segments. It's the same type of permissive disclosure. What's clear is that they do store the information. It does disclose, and I think everyone agrees, it discloses storing the information at the sending transaction accelerator. And the security of the data is a concern. That's right. That was based upon the expert's testimony. In conjunction with the expert's testimony, that one's only art would certainly know that encrypting data could secure data. When the expert goes on and testifies to other things, you have an explicit disclosure that they store encrypted data. And the board says, this is motivation enough. This is showing that they were aware of security. Putting it at the receiving end, these systems are symmetric. So sometimes the sending receives, and sometimes the receiving sends. And so you're storing the same data, and in the same way, that was part of their findings, is that it uses the same type of lookup table. In the same way, at the receiving end. And so it just makes sense, if you want to protect it at the sending end, that you would also want to protect it at the receiving end. That's kind of the, it's a pretty straightforward finding by the board, or a pretty straightforward theory by the board. And I think it's well supported by substantial evidence. But again, at least in Mr. Donnelly's view of the way that McCann works, to the extent that it talks about encryption, there wouldn't be a problem with protecting the data on the receiving side, because it would arrive already encrypted. That is, if you believe that the only thing, the way that McCann works, if you believe that the way McCann works is, once it encrypts data, it always, it either, there's two possibilities, it either always sends the encrypted data, as opposed to sending the unencrypted data, or it encrypts the data, necessarily encrypts the data, before it sends the data. So if it gets the data and passes it on, then everything's fine. It's all protected. That is also an embodiment disclosed in their patents. So they have an embodiment that sends encrypted data as well. But just as in their patent, in McCann, they have the possibility of sending unencrypted data. So there's two options. Either they send the encrypted data, or they send the unencrypted data. But when it's stored, it's not just, when it's stored, you can encrypt it at the other side, if you're sending it unencrypted. So that's the extent of the... Can I return you to the due process issue? Because I'm... Sure, of course. I'm really concerned about how far the board can go. And we're going to go over already plowed ground, but I need a little more time. Sure. When, whether in the original proceeding with respect to the original claims, or where there's a motion to amend, how far the board can go in departing from the particular theories advanced by the petitioner? Now, I suppose it probably goes too far to say that the board can pull up its own prior art that has never before surfaced, and the board certainly pops that out and bases its opinion on prior ethics never before the parties. But how about when there is a new theory, but the theory is based on evidence that was already before the board? How far down that line do we go without running into an APA slash due process problem? I think that there is a clear distinction between the case-in-chief versus the amended case, because based upon... I think there's a distinction. So I think that when you're dealing with the unamended case, Dell seems to indicate in SAS, the board can't spring things on the parties. Again, I don't... The word springs things is a good metaphor, but it doesn't really get to much by way of specificity. Right, and so I think in Dell it was a different... I think the facts of that case was it was a new theory about what a certain disclosure meant. But it was a new theory based on an old disclosure. That's correct, that's correct. And that was no good. According to Dell, that's no good. I would say that in the amendment, in the motion to amend context. Just to be clear, I don't think that's what we have here, because they really... What the board relied upon for the most part was the same expert testimony that was relied upon, that they cited and was relied upon by the petitioner and their opposition. So that's not the case here. But regardless, I think in a motion to amend, the board has to have more leeway for the reasons that we discussed. These aren't existing claims. This is a chance to get claims. So when you're dealing with existing claims and parties come before you, ask you to adjudicate their... Ask you to adjudicate... The patentability of those claims is a different situation than when you're being asked to, in one shot, issue new claims. To constrain your ability to look at the very least at the closest prior art of record and draw your own conclusions about that prior art doesn't make much sense in the context of what that motion to amend is. Can I just ask a follow-on, which is that you mentioned a few times idle-free. And maybe I'm confusing this with something else, but there was a case's name I can't remember that followed idle-free. Real D, I think, is it? No, I thought it was Magic or something. Yeah, now that you've asked me, I'm having one of those moments. Don't say senior. But I recall that the assessment of some was that the board, in its second opinion, was cabining or pulling back a little on idle-free and at least limiting us to a prior art of record. Is that your understanding of what we're talking about? I think it was the prior art of record and then any relevant art. So it was kind of the same duty of disclosure. It folded into the duty of disclosure that ordinarily accrues to people practicing in front of the patent office when you come before the patent office, which, again, makes sense. And the person seeking those claims should identify the closest prior art so that they can just narrow the dispute. So you don't have, you know, you see those IDSs in the file histories with thousands of entries. It's not that type of situation. It's to say, this is what we think is the closest prior art of record. We're going to distinguish over that. Have you thought of the case yet? I'm not going to remember it. All right. So I can address the other, the 101 issue, if you like, but you didn't address it on there. And it's all folded in. Thank you very much. I'm not sure if I'm remembering correctly, but he used the master image. Yes, that's it. Just to address maybe a question you had, Judge Bryson. So what was going on in this case is there was ongoing infringement litigation between the parties. That infringement litigation was settled. And then Riverbend was opposite me throughout our argument. They were there arguing a hammer and tong when we were arguing this motion to amend. They were certainly present. And going back to your question, right, what to do in this situation. So I think in the situation where the board cannot decide the motion on the theories that were presented to it by the petitioner, it comes up with its own theory that it thinks is the only basis to decide it. And do what this court did 15 minutes ago. You call for additional briefing. You ask the patent office, do you want to submit an additional brief on this issue? In this situation, the patent office could do the same thing to us. They say, you know, we have our own theory here. Due process requires you to be allowed to address our new theory. Do you want to submit an additional brief? It's a perfectly acceptable procedure. Just to be clear for the record, it wasn't an analogous circumstance in that case. I appreciate your point. Fair enough. But the opportunity to submit an additional brief is a way to address Judge Bryson's concern in the rare circumstance where the board can only decide a motion to amend on its own new theory. It does seem a little odd to say that an administrative agency, acting albeit under the APA, as well as due process, has much, much tighter handcuffs than we would, for example. Because we would certainly be free to say, well, the Appelese theory is all well and good, but we really don't think that's the best way to decide the case. The best way to decide the case isn't under the theory, which may come as a surprise to the appellant, but it doesn't constitute a due process violation. I think, in this instance, we do have due process constraints by the APA and the board. But the due process ought to be pretty much the same between the two. The APA doesn't apply to us, of course, but it basically just incorporates due process. It just strikes me as a little strange to say that the agencies are handcuffed, although there are other rules that treat agencies differently, generally. I think fundamental fairness requires a notice of what the theory is and opportunity for response. Well, again, if it's fundamental fairness, then why aren't we subject to that same rule? We ought to be fundamentally fair, you would think. I'm sure you would be fundamentally fair in this case. And I think this board has developed guidance for parties before it about when new issues can be raised and when issues that are not in the briefs are going to be taken up. And you can provide the same guidance to the patent office through decisions like this. I did want to address just one point, because I think my friend may have misspoken in his description of McCann. He referred to paragraph 89 of McCann on the JA 975. And he described McCann as being optional, so that you could encrypt and maybe or not send encrypted data. I think he described it as permissive. And if you look at that section in McCann, there is no permissive aspect about it. McCann says either I send, as it describes it, verbatim segments, i.e. segments that literally represent substrings. That is what would otherwise be original data. You're reading from paragraph 89? I am. And the point I'm trying to make is, McCann says I can send original data or I can send encoded data. And the encoding is encryption. But it doesn't say I can encode and then say original data. If you're going to encode, this says I send encoded data. So if there's any encryption at all in McCann, that data is sent from the one transaction accelerator to the other transaction accelerator encrypted. It's the only way it works. Thank you. Thank you. Thank you on both sides. The case is submitted. That concludes our proceedings for this hearing. All rise.